Original
No. 93-003

BUDNITZ' CASE

May 23, 1995

490

*Gormley, Mayer & Gormley, P.C.,* of Nashua (*Arthur O. Gormley, Jr.* on the brief and orally), for the committee on professional conduct.

*Kenna, Johnston & Sharkey, P.A.,* of Manchester (*Bruce E. Kenna* on the brief and orally), for the respondent.

BROCK, C.J. The Supreme Court Committee on Professional Conduct (committee) petitioned for the disbarment of the respondent, Arron E. Budnitz, alleging violations of the Rules of Professional Conduct (Rules). *See* SUP. CT. R. 37(13). We referred the matter to a Judicial Referee (*Dunn,* J.) for a hearing. The referee determined that the respondent had violated Rules 3.3(a)(1), 3.3(a)(3), 8.1(a), 8.4(a) and 8.4(c). We agree that the respondent violated Rule 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary matter), find that this violation warrants disbarment, and, therefore, need not address the other violations.

The following facts are not in dispute. In 1984 and early 1985, the respondent, an attorney licensed to practice in New Hampshire, worked for David Williams in connection with the "Blondheim" companies. In January 1985, the respondent's employment with Blondheim was terminated.

In March 1985, the respondent telephoned Carol Hebert, a former Blondheim employee, and asked her to notarize a document. Unbeknownst to the respondent, Hebert was cooperating with the New Hampshire Attorney General's office in an investigation of Blondheim. Hebert at first declined, but, after conferring with a representative of

the attorney general's office, she called the respondent and agreed to meet him at her apartment in Manchester.

When the meeting occurred, on March 5, 1985, an investigator from the attorney general's office and a postal inspector were secreted in Hebert's apartment. The respondent asked Hebert to notarize a copy of a document entitled "Acknowledgement of Employment Termination" (Acknowledgement) that related to his termination. Hebert did so.

By 1987, Blondheim was under investigation by the Hillsborough County Grand Jury for theft and securities fraud. *See State v. Williams,* 133 N.H. 631, 581 A.2d 78 (1990). The respondent testified before the grand jury and claimed that the Acknowledgement was notarized at the Blondheim offices on "January 21st, about" and that it had been signed there two or three days earlier. He did not know, when he testified, that investigators had been present at Hebert's apartment on March 5, 1985. A complaint against the respondent was filed with the committee by Assistant Attorney General Cynthia L. White after the respondent testified before the grand jury. The respondent averred in his answer to the complaint that he believed his grand jury testimony was true.

██ The referee found by clear and convincing evidence that the defendant had knowingly lied to the grand jury and that he perpetuated this lie in his response to the professional conduct complaint. "In our review of the referee's findings, our only function is to determine whether a reasonable person could have reached the same decision as the referee on the basis of the evidence before him." *Welts' Case,* 136 N.H. 588, 590, 620 A.2d 1017, 1018 (1993) (quotation and brackets omitted).

At the hearing before the referee, only the respondent and Hebert testified. We note that "any conflicts as might be found in the testimony, questions about the credibility of witnesses, and the weight to be given to testimony" are questions to be resolved by the referee. *Bourdon's Case,* 132 N.H. 365, 370, 565 A.2d 1052, 1055 (1989) (quotation and brackets omitted).

Rule 8.1 states, in part: "[A] lawyer in connection with a . . . disciplinary matter, shall not: (a) knowingly make a false statement of material fact . . . ." N.H. R. PROF. CONDUCT 8.1(a). The referee found that, while the respondent began his dissembling of the truth before the grand jury, he continued his attempt to mislead once disciplinary actions were initiated. Ample evidence supports these findings under the clear and convincing standard. Hebert testified that the only time she notarized the Acknowledgement was on March 5, 1985, in her apartment. Before the grand jury, however, the respondent testified that the Acknowledgement was notarized in January at the Blondheim offices, and he continued to assert the truth of that testimony in his answer to the complaint. Resolution of the

discrepancies is for the referee. *Bourdon's Case,* 132 N.H. at 370, 565 A.2d at 1055. Considering that the respondent, through two phone calls, arranged to meet Hebert at her apartment to notarize a documen—a seemingly unusual course of business—it could reasonably be found that he did not simply forget the meeting.

■ Nor do the respondent's efforts to cloak his statements in terms of "belief" or "opinion" avail him. The respondent stands accused of *knowingly* making a false statement of material fact. He does not contend that his statements in response to the complaint against him were immaterial to the disciplinary proceedings. If, as the evidence clearly supports, he knew that the Acknowledgement was not notarized at the Blondheim offices in January, stating his belief to the contrary to the committee constitutes a false statement violative of Rule 8.1(a). *Cf. Carpenito's Case,* 139 N.H. 168, 173, 651 A.2d 1, 4 (1994) (attorney has duty to correct mistaken belief as to a material fact); *Spead v. Tomlinson,* 73 N.H. 46, 62, 59 A. 376, 381 (1904) ("the falsity of the statement consists in stating something as his opinion which is not"). It matters not that the respondent's mendacity before the committee was contained in a preliminary response, not presented at the hearing. *See Astles' Case,* 134 N.H. 602, 604–05, 594 A.2d 167, 169–70 (1991).

We now turn to the appropriate sanction. The committee recommends disbarment. The respondent points to no mitigating factors, choosing, instead, to rely on a highly technical parsing of the Rules to avoid any sanction. As we uphold the referee's ruling as to a serious infraction, the respondent's position fails. We agree with the committee.

■■ "The purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, . . . preserve the integrity of the legal profession, and . . . prevent similar conduct in the future." *Welts' Case,* 136 N.H. at 592, 620 A.2d at 1019 (quotation, citations and ellipsis omitted). Sanctions are intended to meet these purposes. *Id.*

"The gravity of unprofessional conduct is not determined solely by the number of rules broken or by the particular rules violated, but it is determined largely with reference to the attorney's behavior." *Flint's Case,* 133 N.H. 685, 689, 582 A.2d 291, 293 (1990). "No single transgression reflects more negatively on the legal profession than a lie." *Astles' Case,* 134 N.H. at 606, 594 A.2d at 170. As in *Astles' Case,* the respondent had ample opportunity to correct his lie to the grand jury, yet he continued his deceit. *Id.* That his false representation of material facts was to the committee adds to the gravity of the respondent's offense:

> Lying to or attempting to mislead the committee in an attempt to cover up [misdeeds] evidences serious disregard for the institutions the respondent as an attorney has sworn to protect and uphold, and disbarment is the only sanction that will truly protect the public and maintain public confidence in the bar under these circumstances.

*Fitzpatrick's Case,* 132 N.H. 211, 217, 566 A.2d 157, 161 (1989).

Arron E. Budnitz is hereby disbarred forthwith. At the end of two years, he may petition this court for readmission to the New Hampshire bar, subject to the requirements for admission for applicants at that time. *See* SUP. CT. R. 37(2)(d). Furthermore, the respondent is ordered to reimburse the committee for all expenses incurred in relation to this matter. *See* SUP. CT. R. 37(16).

*So ordered.*

All concurred.