**KENTUCKY BAR ASSOCIATION,**
Petitioner,

v.

**Barry Sloan SMITH (KBA Member No. 83508) Respondent.**

No. 2005–SC–0204–KB.

Supreme Court of Kentucky.

June 16, 2005.

## OPINION AND ORDER

The Kentucky Bar Association (KBA) brought this action against Respondent, Barry Sloan Smith, for violations of SCR 3.130–8.3(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); SCR 3.130–1.3 (failure to act with reasonable diligence and promptness in representing a client); SCR 3.130–3.2 (failure to make reasonable efforts to expedite litigation consistent with the client's interests); and SCR 3.130–3.4(c) (knowingly and intentionally disobeying an obligation under the rules of a tribunal).

The foregoing ethical violations arose in connection with Respondent's representation of Ruth Thrasher in a personal injury lawsuit. On September 26, 2001, Thrasher purchased a can of Mountain Dew soda. According to Thrasher, the can contained an industrial staple that became lodged in her throat when she attempted to drink the contents. She thereafter retained Respondent to initiate an action against the manufacturer and bottler of the product, Bottling Group LLC, d/b/a Pepsi Bottling Group (Pepsi), to recover her damages. Respondent filed a Complaint in the Clinton Circuit Court, which Pepsi removed to the United States District Court for the Western District of Kentucky.

The District Court held a scheduling conference in December 2002, and set January 3, 2003, as the deadline for disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. Respondent failed to make the required disclosures. On January 29, Pepsi filed a motion to dismiss. Though the Court waited for the Respondent to file a response to the motion, none was forthcoming. On March 24, 2003, the Court dismissed the action.

Throughout the remaining months of 2003 and January of 2004 Respondent

made numerous oral representations to Thrasher supported by a number of contrived documents and orders all designed to make her believe that her case was either about to be settled or tried. The first document he titled, "Response to notice of Appeal," wherein he alluded to a contrived appeal filed by Pepsi. The Response was signed by Respondent and certified by him to have been served on Pepsi's counsel on September 11, 2003. Pepsi's counsel never received the document. The next document was titled "Offer of Settlement," wherein Plaintiff offered to settle for $2,000,000.00. The document contained a number of contrived stipulations. To follow this "Offer of Settlement" Respondent drafted a document titled "Memorandum," which purported to be Pepsi's response to the proposed "Offer of Settlement." Respondent also created two "Scheduling Orders," one in which he forged the signature of Judge Thomas B. Russell. The first "Scheduling Order" placed the parties on terms to conclude a settlement by December 12, 2003. The second "Scheduling Order" set the case for trial on January 15, 2004. Finally, to comply with his own "Scheduling Order" he drafted an "Amended Complaint," which, although unsigned, included a service date of January 6, 2004. This "Amended Complaint" alleged bad faith on the part of Pepsi respecting negotiations with the Plaintiff.

Smith directed his secretary to call Thrasher on January 13 and tell her that the attorney for Pepsi had withdrawn from the case. Thrasher went to Smith's office on January 14, 2004, where the Respondent pretended to call Judge Russell in her presence. Thrasher became suspicious and began investigating her case. She called Pepsi's attorney at which time she learned that her suit had been dismissed nearly ten months earlier on March 24, 2003. Thrasher wrote Judge Russell explaining how she had been deceived. The Court set a hearing in the matter and ordered the Respondent, Thrasher, and Pepsi's counsel to attend. After Respondent notified the Court that he could not attend the hearing, the Court rescheduled. Again, Respondent notified the Court that he could not attend the hearing. The Court then relayed to Respondent that his failure to attend would result in his being deemed in contempt. Respondent did not appear at the hearing. The Court determined that Thrasher's testimony was credible and directed Respondent to appear at Bowling Green on June 2, 2004, to show cause why he had failed to comply with the Court's orders. Respondent did not appear and the Court entered an Order on June 7, 2003, finding Respondent in contempt and fining him $5,000.00. The Court, in a separate order, sustained Thrasher's pro se motion to reinstate her action and allow her time to retain new counsel.

Thrasher filed a bar complaint against Respondent on April 5, 2004. Respondent filed a response on June 21, 2004, admitting that he committed errors, and explaining that he "did not fully acquaint and educate [himself] as to the practice in Federal Courts." On October 4, 2004, the Inquiry Commission issued a four count Charge against Respondent. He has not answered the Charge.

A review of Respondent's record demonstrates a casual indifference to the needs of his clients and an alarming disrespect for the courts. In 1994, Respondent was suspended from practice for noncompliance with CLE requirements. While suspended, he continued to practice law. He was paid $400.00 to settle an estate that he failed to settle. After discovering that Respondent had been suspended, his clients filed a Bar Complaint against him resulting in a second suspension following the

CLE suspension. He also appeared as counsel at a pretrial conference in a matter in Taylor County. After being questioned by the judge, he conveyed that the appropriate reinstatement documents had been filed, although the documents had not been filed. He never responded to the Inquiry Tribunal's Complaint against him. In May 1995, a three count Charge was issued relating to Respondent's practicing on a suspended license and his failure to respond to the Complaint. On June 13, 1995, Respondent submitted a response to the Charge admitting all allegations, although denying that he intentionally misled anyone. On January 16, 1996, this Court ordered Respondent suspended for eighteen months. *Ky. Bar Ass'n v. Smith,* 913 S.W.2d 317 (Ky.1996). On November 19, 1998, we reinstated Respondent to the practice of law, noting that he had taken steps in the right direction by complying with CLE requirements, making satisfactory arrangements with his creditors, and indicating that he would attend seminars to improve his business management skills. *Smith v. Ky. Bar Ass'n,* 979 S.W.2d 111, 112 (Ky.1998).

Regrettably, Respondent has not changed. The allegations of this Charge, a Charge to which Respondent has not responded, are serious. At their core, they involve incompetence, lack of diligence, fraud, deception, and forgery. Accordingly, IT IS HEREBY ORDERED that:

1. Respondent, Barry Sloan Smith, is hereby permanently disbarred from the practice of law.

2. In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $626.38, and for which execution may issue from this Court upon finality of this Opinion and Order.

3. If he has not already done so, in accordance with SCR 3.390, Respondent shall, within ten (10) days from the entry of this Opinion and Order: (a) to the extent possible, cancel and cease any advertising activities in which he is engaged; and (b) notify, in writing, all courts in which he may have matters pending, and all clients for whom he is actively involved, of his inability to provide further legal services, and furnish the Director of the Kentucky Bar Association with a copy of all such letters.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., sitting.

All concur.

ENTERED: June 16, 2005.

/s/ Joseph E. Lambert
Chief Justice