# IN THE MATTER OF THE DISBARMENT OF: KENTH W. ROGERS, ESQUIRE AS A MEMBER OF THE VIRGIN ISLANDS BAR

S. Ct. Civil No. 2013-0079

Supreme Court of the Virgin Islands

December 12, 2013

296

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 12, 2013)

PER CURIAM. This matter is before the Court pursuant to a consolidated petition for disciplinary action filed by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court approve its recommendation to, among other things, disbar Kenth W. Rogers — a suspended attorney — as a member of the Virgin Islands Bar Association. For the reasons that follow, we grant the petition.

## I. BACKGROUND

The EGC's consolidated petition involves five separate disciplinary proceedings initiated against Rogers. The first matter came before the

EGC through a February 5, 2010 Opinion issued by the Superior Court in *Osborne v. Osborne*, Super. Ct. Civ. No. 599/2005 (STT), in which Rogers represented one of the parties. The judge assigned to that case, the Honorable Michael C. Dunston, had referred the matter to mediation, and when Rogers failed to appear, required him to show cause. Rogers responded by filing a motion to disqualify Judge Dunston, supported by an affidavit where Rogers averred that he and Judge Dunston were opposing counsel in a case litigated before the District Court nearly twenty years ago, prior to Judge Dunston's appointment to the bench in 2007. In the affidavit, Rogers stated that Judge Dunston had filed a "totally dishonest" pleading, and, when he confronted him with this at a status conference, maintains that Judge Dunston physically assaulted him. Rogers further averred that Judge Dunston's assault on his person had been witnessed by United States Magistrate Judge Geoffrey Barnard. Shortly after receiving the filing, Judge Dunston held a hearing on January 14, 2008, where he characterized Rogers's affidavit as knowingly false. After various other proceedings in the Osborne matter, Judge Dunston issued the February 5, 2010 Opinion, which concluded that Rogers deliberately ignored the mediation referral orders and noted that the contents of Rogers's affidavit called his fitness to practice law into question.

The panel held a hearing on March 12, 2012, where it heard testimony from Judge Dunston, Rogers, and Magistrate Judge Barnard. Importantly, at the hearing, Magistrate Judge Barnard emphatically denied that any such assault had occurred. The panel issued its decision on April 8, 2013, in which it concluded that Rogers violated Rules 3.1 (bringing frivolous claims), 3.3(a) (knowingly making false statements of fact to a tribunal), 3.5(d) (disrupting a tribunal), 4.1(a) (knowingly making false statements of fact to a third person), and 8.2(a) (knowingly making false statements concerning the integrity of a judge) of the Model Rules of Professional Conduct. As a sanction, the panel recommended a six-month suspension from the practice of law, as well as payment of $1,536 in costs. On May 21, 2013, Rogers filed a document, captioned as a "Writ of Review," which stated that he wished to appeal the EGC's decision, and argued, amongst other things, that its ruling violated the First Amendment of the United States Constitution.

The second matter also stems from a referral by a judge. United States District Judge Juan Sanchez, sitting by designation in the District Court

of the Virgin Islands, had issued a November 30, 2009 Order scheduling a status conference for 9 a.m. on December 11, 2009, in a case where Rogers represented one of the parties. Three hours before the status conference was set to occur, Rogers filed a motion to dismiss the case for lack of subject matter jurisdiction, and to continue the status conference. Rogers did not appear at the status conference, and was not reachable by telephone despite several attempts by the court to contact him. Therefore, Judge Sanchez scheduled another hearing for December 18, 2009, for Rogers to show cause as to why he should not be held in contempt for his failure to appear. In response, Rogers filed a motion to withdraw as counsel on December 17, 2009. When Rogers appeared at the December 18, 2009 hearing, Judge Sanchez orally granted the motion, but directed him not to reenter his appearance in the case. Judge Sanchez memorialized his decision in writing in a December 22, 2009 Order, which also directed Rogers to pay $900 to opposing counsel as a sanction for his failure to appear. On March 8, 2010, and again on March 10, 2010, Rogers filed a motion to dismiss the case — despite having withdrawn as counsel and being precluded from reentering his appearance — and on May 11, 2010, initiated a new action in the Superior Court of the Virgin Islands on behalf of the same client. On November 10, 2010, Judge Sanchez ordered Rogers to appear before him on December 6, 2010, to show cause as to why he should not be held in contempt for failing to obey the December 22, 2009 Order, but Rogers failed to appear at the hearing.

The EGC initiated an investigation into the matter after it received Judge Sanchez's referral. Rogers, however, failed to participate in that investigation. During the course of the investigation, the panel discovered from his opposing counsel in the District Court case that Rogers had also never paid the $900 sanction as required by the December 22, 2009 Order. In light of Rogers's default, the panel considered the matter without a hearing, and issued a decision on August 31, 2012, where it concluded that Rogers violated Model Rules 3.4 (fairness to opposing party and counsel), 3.5(d) (disrupting a tribunal), 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). The panel concluded that a six-month suspension, as well as successful completion of the Multistate Professional Responsibility Examination prior to petitioning for reinstatement, represented the appropriate sanction

for this misconduct. On September 30, 2012, Rogers filed a document, captioned as a "Petition for Writ of Review," which stated that he wished to appeal the EGC's August 31, 2012 decision; however, Rogers's filing did not identify any defects with the EGC's decision and was otherwise not accompanied with any legal argument.

The remaining three matters were also brought to the EGC's attention by the courts, and involve accusations that Rogers engaged in the unauthorized practice of law. This Court, in a July 21, 2011 Order, suspended Rogers from the practice of law for his failure to satisfy the mandatory continuing legal education requirements set forth in Supreme Court Rule 208. *In re Suspension of Rogers*, S. Ct. BA. No. 2011-0123, slip op. at 3 (V.I. July 21, 2011) (unpublished). Yet on August 2, 2011, Rogers acted as counsel in a forcible entry and detainer action before the Magistrate Division of the Superior Court, and on September 9, 2011, filed a motion for extension of time on behalf of a client in an appeal pending before this Court. In a September 12, 2011 Order, this Court rejected that motion, and expressly advised Rogers that as a suspended attorney he could not file documents on behalf of clients or otherwise engage in the practice of law. *Walters v. Walters*, S. Ct. Civ. No. 2010-0040, slip op. at 1 (V.I. Sept. 12, 2011) (unpublished). Nevertheless, Rogers appeared as counsel in a Superior Court case the very next day, and proceeded to file additional documents on behalf of clients in Superior Court matters on January 31, 2012, and February 13, 2012.

The EGC consolidated all of the unauthorized practice of law referrals and, when Rogers failed to respond to any of the EGC's requests for an answer, considered all of the accusations without a hearing. The EGC issued its decision on August 16, 2013, concluding that Rogers repeatedly violated section 443(a) of title 4 of the Virgin Islands Code — which defines the the unauthorized practice of law in the Virgin Islands — as well as Model Rule 5.5, which prohibits attorneys from engaging in the unauthorized practice of law. Although not specifically invoked, the panel also, through its findings, implicitly found that Rogers violated Model Rule 8.1(b). As a sanction, the panel recommends his disbarment.

In a September 24, 2013 Order, this Court directed Rogers to file, on or before October 15, 2013, a brief addressing all of the disciplinary matters that the EGC had brought before the Court. Although this deadline has lapsed, Rogers has not filed a brief, a motion for extension

of time, or any other document in response to our September 24, 2013 Order.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

■ ■ This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually de novo, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). "[T]he failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, 58 V.I. 208, 214 (V.I. 2013) (quoting *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished)) (internal quotation marks and alterations omitted). However, even if an attorney answers a grievance, the failure to attend a scheduled hearing or to file an answer with this Court will also result in default. *See In re Eichenauer-Schoenleben*, 59 V.I. 958, 966 (V.I. 2013) (citing *Parson*, 58 V.I. at 214). Therefore, before conducting any other inquiry, this Court must determine whether Rogers violated Model Rule 8.1(b). *In re Suspension of Joseph*, 56 V.I. 490, 498-99 (V.I. 2012).

301

## B. Model Rule 8.1(b)

█ "Rule 8.1 prohibits a lawyer, in connection with a disciplinary matter, from knowingly failing to respond to a lawful demand for information from a disciplinary authority." *Brusch*, 49 V.I. at 419 (citing Model Rule 8.1(b)). Thus, "an attorney who has been 'provided [with] numerous opportunities to respond' to a grievance, yet who 'inexplicably remain[s] silent' by failing . . . to appear at the adjudicatory hearing will clearly violate Rule 8.1(b)." *Joseph*, 56 V.I. at 499 (quoting *Brusch*, 49 V.I. at 419).

█ Here, Rogers clearly violated Model Rule 8.1(b) with respect to the Judge Sanchez and unauthorized practice of law matters by failing to file an answer with the EGC, which caused the respective panels to proceed on a default basis. Moreover, he exacerbated that existing violation by failing to file a brief as required by this Court's September 24, 2013 Order. However, we decline to hold that Rogers violated Model Rule 8.1(b) as to the Judge Dunston matter. First, the panel considering that matter did not find that Rogers violated Model Rule 8.1(b), since Rogers filed an answer and appeared at the March 12, 2012 hearing. And while Rogers failed to comply with our September 24, 2013 Order directing him to file a brief, we note that the "Writ of Review" he filed on May 21, 2013 stated that he wished to appeal the EGC's decision in that case, and — unlike the "Petition for Writ of Review" he filed in response to the EGC's adjudication of the Judge Sanchez matter — his May 21, 2013 filing actually contained legal arguments and citations to authorities that purportedly supported those arguments. In other words, Rogers essentially filed a premature brief with this Court. Therefore, we hold that Rogers did not violate Model Rule 8.1(b) with respect to the Judge Dunston matter, and thus we, like the EGC, proceed on a default basis only as to the Judge Sanchez and unauthorized practice of law matters. *Eichenauer-Schoenleben*, 59 V.I. at 968.

## C. The Judge Dunston Matter

██ In its decision adjudicating the matter referred to it by Judge Dunston, the panel found that Rogers violated Model Rule 3.1 by bringing a frivolous claim, Model Rule 3.3(a) by knowingly making a false statement of fact to the Superior Court, Model Rule 3.5(d) by disrupting the Superior Court proceedings, Model Rule 4.1(a) by

302

knowingly making a false statement of fact to a third person, and Model Rule 8.2(a) by knowingly making false statements concerning the integrity of a judge. In his May 21, 2013 filing, which we construe as a brief, Rogers primarily argues[1] that the EGC punished him for speech protected by the First Amendment.

 Rogers's argument lacks merit. As Rogers himself acknowledges in his brief, the United States Supreme Court has expressly held that statements with "provably false factual connotation[s]" lack First Amendment protection. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). The EGC, after hearing testimony from Rogers, Judge Dunston, and Magistrate Judge Barnard, concluded that Rogers's allegation that Judge Dunston physically assaulted him in Magistrate Judge Barnard's courtroom was, indeed, a false statement. And while Rogers is correct that there is some authority for applying the actual malice standard set forth in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 327-28, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), to attorney discipline cases, in that three jurisdictions have expressly adopted this standard, we note that the overwhelming majority of courts have held that an objective standard of whether a lawyer knew a statement made about a judicial officer is false or made with reckless disregard for its falsity — rather than the subjective standard adopted for defamation cases in *Gertz* — applies to attorney discipline cases. *See Office of Disciplinary*

---

[1] In his filing, Rogers states that the Chief Justice of this Court should recuse himself from consideration of the Judge Dunston matter because he "was [the] attorney for First Virgin Islands Federal Saving Bank in the litigation from which this proceeding arises," and "presided in a related proceeding . . . in which Judge Dunston was the attorney for [the plaintiff]." (Br. 3.) However, the fact that a judicial officer previously presided over a case involving the same party is not grounds for recusal. *See, e.g., United States v. Liteky*, 973 F.2d 910, 910 (11th Cir. 1992); *State v. Alexander*, 334 So.2d 388, 392 (La. 1976). And while the Chief Justice represented First Virgin Islands Federal Savings Bank prior to becoming a judge, he did not represent the bank in *First V.I. Federal Savings Bank v. Morgan*, No. 3:92-cv-00179-RLF; rather, the District Court docket reflects that Blake A. Tatom, Esq., represented the bank in that case. In any case, Rogers concedes in his filing that "only Rogers, Dunston and Barnard" were present in chambers when the events at issue occurred, (Br. 5), and thus the Chief Justice could not have had "personal knowledge of disputed evidentiary facts concerning the proceeding." V.I.S.Ct.I.O.P. 10.2.1(a).

Additionally, Rogers argues that to constitute a violation of Model Rule 8.2(a), the disparagement of the judge must relate to conduct that occurred while the judge actually served as a judicial officer, rather than as a lawyer. However, the plain text of Model Rule 8.2(a) — which also prohibits false statements about candidates for judicial office — contains no such limitation, nor has Rogers cited to any legal authority for this novel interpretation.

303

*Counsel v. Gardner*, 99 Ohio St. 3d 416, 793 N.E.2d 425, 431-32 (2003) (collecting cases). In any case, we need not determine, as part of this case, whether to adopt the objective or subjective standard,[2] since under either approach it is readily apparent, in light of the clear, unwavering testimony of Magistrate Judge Barnard — the only other individual present at the status conference — that nothing even remotely representing a physical assault occurred in his chambers. Therefore, we agree with the panel that Rogers' false statements about Judge Dunston in the affidavit accompanying his recusal motion violated Model Rules 3.1, 3.3(a), and 8.2(a), and that the filing of the frivolous recusal motion disrupted the Superior Court proceedings so as to violate Model Rule 3.5(d) since it resulted in an unnecessary hearing and other collateral proceedings. *See Obert v. Republic Western Ins. Co.*, 264 F.Supp.2d 106, 116 (D. R.I. 2003) (filing a false affidavit in support of disqualification constitutes Model Rule 3.5 violation).

 We disagree, however, that Rogers violated Model Rule 4.1(a), which prohibits making false statements of material fact to third persons. Case law, as well as the comments to Model Rule 4.1, reflect that a "third person," for purposes of Model Rule 4.1(a), is someone other than the parties and the court. *See, e.g., State ex rel. Okla. Bar Ass'n v. Bolusky*, 2001 OK 26, 23 P.3d 268, 275 (2001) (client is not a "third person" within meaning of Rule 4.1); *Attorney Grievance Comm'n of Md. v. Rohrback*, 323 Md. 79, 591 A.2d 488, 496 (1991) (false statement to judge violates Rule 3.3, not Rule 4.1); MODEL RULES PROFL. CONDUCT. R. 4.1 cmt. 1 ("A lawyer is required to be truthful when dealing with others on a client's behalf . . . ."). In this case, the panel makes no reference to Rogers making any false statements about Judge Dunston except as part of the Superior Court proceedings and to the panel at the March 12, 2013 hearing, neither of which constitutes a violation of Model Rule 4.1(a).

---

[2] Under the subjective standard, a court adjudicating an attorney discipline matter must consider "whether the lawyer uttered the statement with knowledge that the statement was false or with reckless disregard as to its truth." *Gardner*, 793 N.E.2d at 432. In contrast, a court applying the objective standard "assesses an attorney's statements in terms of what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances and focuses on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." *Id.* at 422 (quoting *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430, 1437 (9th Cir. 1995)) (internal quotation marks and alterations omitted).

Accordingly, we conclude that Rogers only violated Model Rules 3.1, 3.3(a), 3.5(d), and 8.2(a) in connection with the Judge Dunston matter.

## D. The Judge Sanchez Matter

Given our holding that Rogers violated Model Rule 8.1(b) with respect to the matter referred to the EGC by Judge Sanchez, we review the underlying EGC decision solely "to independently determine whether the panel correctly held that these facts constituted ethical violations." *Joseph*, 56 V.I. at 499. In addition to breaching Model Rule 8.1(b), the panel in this case concluded that Rogers violated Model Rule 3.4(c) by knowingly disobeying multiple District Court orders, Model Rule 3.5(d) by engaging in conduct intended to disrupt the District Court proceedings, and Model Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice.

We agree with the panel that the facts set forth by Judge Sanchez, if accepted as true, demonstrate that Rogers violated Model Rule 3.4(c) four times when he failed to appear at the December 11, 2009 status conference and December 6, 2010 show cause hearing, and filed motions to dismiss on March 8 and March 10, 2010, on behalf of his former client despite withdrawing as counsel and being ordered not to reenter his appearance. We also agree that this conduct also violated Model Rules 3.5(d) and 8.4(d), in that Rogers's actions disrupted the District Court proceedings and prejudiced the administration of justice by requiring the District Court to hold several additional hearings as a result of Rogers's actions.

Nevertheless, we disagree with the panel that Rogers violated Model Rule 3.4(c) when he filed a new action for the same client in the Superior Court on May 11, 2010, despite the District Court's December 21, 2009 Order. It is well established that "this Court and the District Court each possess the authority to regulate our respective bars," *In re Admission of Alvis*, 54 V.I. 408, 413-14 (V.I. 2010) (citing *Cowen v. Calabrese*, 230 Cal. App. 2d 870, 41 Cal.Rptr. 441, 443 (1964)), and thus the District Court could not prevent Rogers from practicing law in the Superior Court when he was otherwise authorized to do so. *See In re Stubbs*, 285 Ga. 702, 681 S.E.2d 113, 114 (2009) ("While the federal district court had authority to discipline or suspend [the respondent] from the practice of law in its court for misconduct in violation of its local rules . . . it has no authority to revoke [his] license to practice law.")

305

(citing *Frazier v. Heebe*, 482 U.S. 641, 648 n.7, 107 S. Ct. 2607, 96 L. Ed. 2d 557 (1987)); *see also Theard v. United States*, 354 U.S. 278, 281, 77 S. Ct. 1274, 1 L. Ed. 2d 1342 (1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their . . . lawyers."). More importantly, the District Court, in a memorandum accompanying its December 21, 2009 Order, did not purport to limit Rogers's ability to practice in the Superior Court, in that it only prohibited Rogers from reentering his appearance in specific District Court cases. *See Administrator-Benefits for ExxonMobil Savings Plan v. Williams*, Civ. No. 09-72, 2009 U.S. Dist. LEXIS 120213, \*10 (D.V.I. Dec. 21, 2009) (unpublished).

 We also find that the panel erred when it found that Rogers violated Model Rule 3.4(c) by failing to pay the $900 fine to opposing counsel. Although the December 22, 2009 Order required Rogers to tender payment within 30 days, failure to pay a fine ordered by a tribunal may be excused if the non-payment is due to an inability to pay. *See, e.g., In re Suspension of Adams*, 58 V.I. 356, 364 (V.I. 2013); *cf. Bearden v. Georgia*, 461 U.S. 660, 668-69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1984) (observing that it is "fundamentally unfair" and a violation of due process to revoke probation for non-payment of restitution when defendant lacks financial means to pay restitution). Notwithstanding Rogers's default, it is the EGC — and not Rogers — that bears the burden of establishing an ethical violation by clear and convincing evidence. "The clear and convincing evidence standard . . . requires evidence sufficient to 'enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *In re Campbell*, 59 V.I. 701, 716 (V.I. 2013) (quoting *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 886 (1986)). Thus, while we must accept as true the fact that Rogers did not pay the fine, we cannot conclude, from mere non-payment, that he willfully refused to pay his obligation, as opposed to simply not having the means to pay.

 Additionally, we reject the panel's conclusion that Rogers violated Model Rule 3.4(c) by virtue of his failure to participate in the disciplinary proceedings. As explained above, a respondent attorney's failure to timely file an answer, attend a scheduled EGC hearing, or otherwise participate in a disciplinary proceeding violates Model Rule 8.1(b). To hold that this same conduct violates Model Rule 3.4(c) would transform, without exception, every Model Rule 8.1(b) violation into a Model Rule 3.4(c)

violation, just as treating a judge as a "third person" for purposes Model Rule 4.1(a) would automatically convert every breach of Model Rule 3.3 into a Model Rule 4.1(a) violation. Accordingly, we conclude that Rogers violated Model Rule 3.4(c) on four separate occasions, as well as committed violations of Model Rules 3.5(d), 8.1(b), and 8.4(d).

## E. The Unauthorized Practice of Law Charges

As noted earlier, since Rogers violated Model Rule 8.1(b) through his failure to respond to the unauthorized practice of law charges, we review the underlying EGC decision only "to independently determine whether the panel correctly held that these facts constituted ethical violations." *Joseph*, 56 V.I. at 499. Like the EGC, we do not hesitate in concluding that Rogers engaged in the unauthorized practice of law, in violation of 4 V.I.C. § 443 and Model Rule 5.5, on numerous occasions between August 2, 2011 — when he appeared as counsel in a forcible entry and detainer action before the Magistrate Division — and February 13, 2012, when he filed two motions for summary judgment in a civil case pending in the Superior Court, despite being suspended from the practice of law.

## F. Sanctions

Because we agree with the EGC that Rogers committed ethical misconduct, we now determine whether to accept its recommended sanctions. To ascertain the proper sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, we must be "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

307

Unlike our prior attorney discipline cases, our review of the EGC's recommendation is complicated by the fact that each panel separately applied the ABA Standards to the particular matter before it. Ideally, upon recognizing that multiple disciplinary proceedings had been initiated against Rogers that involved substantially similar allegations of misconduct, the EGC should have issued an order of consolidation and assigned them for disposition by the same panel as part of a single disciplinary proceeding. *See* V.I.S.CT.R. 207.1.12(b). Such consolidation would have reduced the possibility that piecemeal or inconsistent discipline would be imposed. However, since the panel that considered the unauthorized practice of law charges recommends that we impose the ultimate sanction of disbarment, whereas the panels that adjudicated the Judge Dunston and Judge Sanchez matters each recommended only a six-month suspension, we begin by reviewing that panel's decision, since, if we were to agree that the unauthorized practice of law violations, without more, warrant disbarment, it would render any further analysis unnecessary.

 The unauthorized practice of law panel identified disbarment as the baseline sanction. We agree with the EGC that Rogers knowingly violated the prohibition on unauthorized practice of law. While it is possible — although unlikely — that Rogers may not have received actual notice of this Court's July 21, 2011 Suspension Order by the time he appeared before the Magistrate Division on August 2, 2011, the EGC correctly recognized that this Court's September 12, 2011 Order in the *Walters* case — which Rogers received and reviewed, and led to a chain of events that ultimately resulted in him being held in contempt by this Court, *see Walters v. Walters*, 56 V.I. 471 (V.I. 2012) — unquestionably placed him on notice that he could not practice law in either this Court or in the Superior Court as a result of his suspension. Moreover, as the panel correctly noted, the record reflects that multiple Superior Court judges issued orders referring Rogers's unauthorized practice to the EGC over the course of several months, yet Rogers continued to represent clients and otherwise practice law in Virgin Islands courts. We also agree with the EGC that an attorney who engages in the unauthorized practice of law in flagrant disregard of a suspension order has breached an exceptionally important duty to the legal system and caused actual injury to the administration of justice, so as to warrant the presumptive baseline sanction of disbarment when combined with a knowing mental state. *See,*

*e.g., In re Williams,* 885 So.2d 519, 522 (La. 2004) ("The baseline sanction for respondent's misconduct, especially considering the multiple offenses of engaging in the unauthorized practice of law, is disbarment."); *People v. Mason,* 212 P.3d 141, 149 (Colo. O.P.D.J. 2009) ("ABA Standard 8.1 . . . presume[s] the most severe sanction of disbarment when a lawyer violates a court order to not practice law while under suspension.") (citing *People v. Redman,* 902 P.2d 839 (Colo. 1995)); STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 8.1 ("Disbarment is generally appropriate when a lawyer . . . intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession . . . .").

 Ordinarily, after having identified the baseline sanction, we consider whether any aggravating or mitigating factors may warrant an upward or downward departure. However, when disbarment is the baseline sanction, we first need consider only the potential mitigating factors, since the absence of any mitigation will make it unnecessary to analyze the aggravating factors. Because Rogers violated Model Rule 8.1(b) by failing to answer any of the unauthorized practice of law charges — itself an aggravating factor — the record contains absolutely no evidence of mitigation. And while we need not fully analyze the aggravating factors given the absence of any mitigating factors, we cannot ignore that Rogers possesses an extensive history of formal discipline beyond his suspension for CLE non-compliance, *see, e.g., In re Suspension of Rogers,* S. Ct. Civ. Nos. 2012-0059, 0042, 2012 V.I. Supreme LEXIS 79, *17-18 (V.I. Oct. 26, 2012) (unpublished); *In re Rogers,* 56 V.I. 618, 622 (V.I. 2012); and informal discipline in the form of being held in contempt or otherwise sanctioned, *see, e.g., Walters,* 56 V.I. at 480; *In re Rogers,* 56 V.I. 325, 329-33 (V.I. 2012); *Lee v. Smith,* Super. Ct. Civ. No. 521/2002 (STT), 2011 WL 3854059, at *3 (V.I. Super. Ct. Mar. 17, 2011) (unpublished). In light of our conclusion that disbarment is warranted solely for the unauthorized practice of law violations, we need not review the EGC's proposed sanctions with respect to the Judge Dunston and Judge Sanchez matters, given that disbarment represents the highest form of discipline we may impose upon an attorney for ethical misconduct.

## III. CONCLUSION

For the foregoing reasons, we grant the EGC's petition to disbar Rogers. Since Rogers is presently suspended from the practice of law for prior ethical misconduct, *see Rogers*, 2012 V.I. Supreme LEXIS 79, we find that his disbarment shall be effective immediately, *see* V.I.S.CT.R. 207.5.5(a). We also direct Rogers to reimburse the EGC for the $1,536 in costs it incurred with respect to the Judge Dunston matter.